49 CCPA

Application of John M. HARDY, William B. Taylor and Wilber H. Griffin.

Application of William B. TAYLOR, John M. Hardy, and Wilber H. Griffin.

Patent Appeal Nos. 6765, 6776.

United States Court of Customs and Patent Appeals.

April 11, 1962.

James F. Weiler, Houston, Tex., for appellants.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for Comr. of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN and SMITH, Judges.

WORLEY, Chief Judge.

These appeals are from decisions of the Board of Appeals in application Serial No. 435,308, filed June 8, 1954 (No. 6765) and application Serial No. 589,122, filed June 4, 1956 (No. 6776). The parties are the same and both applications are entitled "Sealed Joint." Serial No. 589,-122 is designated as a continuation-in-part of Serial No. 435,308.

In Serial No. 435,308, the appeal is from the board's affirmance of the examiner's rejection of claims 15, 16, 19, 20 and 21. Claims 17 and 18, the only other claims in that application, were allowed by the examiner.

The appeal in Serial No. 589,122 is from the board's affirmance of the examiner's refusal to allow claims 11, 12, 13 and 14, the only claims remaining in that application.

The applications relate to tool joints which provide seals for fluids under high pressure and have particular utility in drilling oil and gas wells. The essential features are sufficiently described in the following representative claims:

Claims 15 and 16, representative of Serial No. 435,308, read:

"15. A tool joint comprising a pin member, a first reduced diameter portion projecting from the pin member, a second reduced diameter portion adjacent the terminal end of the first reduced diameter portion, a friction surface on the second reduced diameter portion, a packing band formed of polymerized polytetrafluoroethylene disposed about the second reduced diameter portion and engaging the friction surface, a box member, said box member receiving said first and second reduced diameter portions in interfitting relationship, interengaging threads on the first reduced diameter portion and in the box, and a tapered surface in the box disposed opposite the reduced diameter portion, said packing sealingly engaging and being confined by the tapered surface and being compressed and extruded against and adjacent the friction surface.

"16. The joint of claim 15 where the first and second reduced diameter portions, the box and tapered surface are all provided with the same taper."

In Serial No. 589,122, claims 11 and 14 are representative and read:

"11. A tool joint comprising a pin, a box, said pin fitting in said box, interengaging threads on the pin and in the box, a reduced diameter portion interiorly of the threads on one of the pin and the box, an inwardly tapered surface on the other

of the pin and the box adjacent the reduced diameter portion, and a generally cylindrically-shaped packing band disposed about the reduced diameter portion, said packing band formed of a generally nonresilient, nonmetallic, extrudable material, said packing band compressed into sealing engagement with the inwardly tapered surface and provided with extruded lip seals adjacent each end of the reduced diameter portion sealingly engaging the said inwardly tapered surface.

"14. The tool joint of claim 11 where the terminal ends of the pin and box are about one-fourth the total thickness of the tool joint and including shoulders on the pin and in the box adjacent to the terminal ends, said shoulders being about three-fourth the total thickness of said tool joint, and where the mid portions of the interfitting portions of the pin and box are about one-half the total thickness of the tool joint."

The references relied on in connection with Serial No. 435,308 are:

| | | |
|---|---|---|
| Hinderliter | 2,150,221 | March 14, 1939 |
| Reimschissel | 2,181,343 | November 28, 1939 |
| Mulard (French) | 1,078,733 | May 12, 1954 |

The Hinderliter and Mulard patents were also relied on by the board in the refusal of the claims in Serial No. 589,122, along with the following prior art:

| | | |
|---|---|---|
| Hinderliter | 2,110,127 | March 8, 1938 |
| Plunkett | 2,230,654 | February 4, 1941 |
| Fields | 2,456,262 | December 14, 1948 |
| Waring | 2,494,598 | January 17, 1950 |
| MacArthur | 2,532,632 | December 5, 1950 |

Each of the Hinderliter patents discloses a tool joint comprising pin and box members interfitted through matching threaded portions of tapered surfaces. Figure 4 of each patent shows a pin having an annular groove near its end for receiving a resilient rubber packing ring. When the pin is threaded into the box, the ring is compressed into sealing arrangement with an unthreaded end portion of the tapered surface of the box.

The Reimschissel patent shows another threaded tool joint on which the pin and box members are engaged along tapered surface portions. A recess is formed at the end of the pin member with an inner surface having the same paper as the opposed surface of the box member. That recess receives a packing band of relatively soft metal for compression between the two surfaces.

The French patent to Mulard discloses a pipe joint of the gland and nut type utilizing a sealing ring of Teflon.[1] The patent discloses that the joint utilizes Teflon's property of running or flowing when subjected to compressive force. It also discloses that the ring material flows lipshaped into a gap between the elements of the joint.

The Plunkett, Fields, and Waring patents describe properties of Teflon and disclose that it is used as a gasket material.

The board regarded the examiner's position relative to claims 15, 16, 19, 20 and 21 to be that "the substitution of a gasket formed of Teflon for the rubber gasket of Hinderliter [No. 2,150,221] or the soft metal of Reimschissel would be a matter of choice in the judicious selection of known materials and therefore would not

1. "Teflon," according to the record, is a trademark under which E. I. duPont de Nemours & Company sells polymerized tetrafluoroethylene, also known as polytetrafluoroethylene.

be patentable." It was the board's view that Mulard "is sufficient to suggest to one skilled in the art here involved that it might be desirable to use Teflon in any joint having a sealing gasket."

■ Although we have considered appellants' arguments that the Mulard joint differs structurally from those of the other references, we think the Patent Office tribunals did not err in their reliance on that reference. The clear analogy of the sealing functions of the packing material in the prior art joints compels the conclusion that Mulard would make it obvious to substitute Teflon for either the resilient packing material of Hinderliter No. 2,150,221 or the soft metal packing of Reimschissel.

Appellants refer to an affidavit of a former employee of a fabricator of Teflon shapes as bringing out "that in March of 1954 [a few months before the filing date of Serial No. 435,308] there was not a successful oil field tool joint or coupling commercially available utilizing a Teflon seal ring, and that he was informed by an engineer that Teflon was not satisfactory for use as a seal ring due to its failure because of its cold flow on certain tests, and that Teflon seal rings for joints were not acceptable to him, or to his company or to the trade at that time." That affidavit, setting out the conclusions of one individual, falls far short of establishing that the substitution of Teflon in the packing bands of the basic references would not be obvious to a person of ordinary skill in that art.

Aside from the composition of the packing band, appellants appear to rely for patentability of the claims in Serial No. 435,308 on the recitations of a friction surface on the pin about which the packing band is disposed. In that connection, the board noted that Reimschissel states that the "metal [his sealing material] will 'creep' into the surface irregularities of the coacting surfaces of the sealed members." It also was of the view

that such surface irregularities are inherently present in the joint of Hinderliter No. 2,150,221 and it held that the surface irregularities in the two basic references meet the broad language with which the friction surface is recited in the claims. We find no error in that holding.

The board considered claims 11, 12, and 13 of Serial No. 589,122 unpatentable over Hinderliter No. 2,110,127, with secondary reference especially to Mulard and Hinderliter No. 2,150,221, although it also referred to the Plunkett, Fields, and Waring patents cited by the examiner. Claim 14 held unpatentable over the references applied to claims 11, 12, and 13 further in view of MacArthur.

It was the board's position that the secondary references, Plunkett, Waring, Fields, and especially Mulard, would suggest to one skilled in the art that it might be desirable to use Teflon in any joint having a sealing gasket. It seems to us that Mulard, in particular, would suggest the substitution of Teflon for the packing material in other sealed joints and we see nothing unobvious in making such substitution in the joints of either Hinderliter patent or Reimschissel.

Appellants appear to regard the recitation of extruded lip seals provided on the packing band in claim 11, which is carried into dependent claims 12, 13, and 14, as of patentable significance. The board referred to the last six lines of the sole claim in Hinderliter No. 2,150,221 as disclosing such seals.[2] It also held that, in view of that disclosure, it would be obvious to form lip seals in the joint of the principal reference. We find no error in that holding, particularly in view of the disclosure of lip seals in Mulard. That disclosure additionally suggests that lip seals be provided when Teflon is substituted for the packing material of Hinderliter No. 2,110,127.

In considering claim 14, the board referred to MacArthur, which shows a joint

---

2. The last six lines of the claim state:
  * * * said rings being thick enough to project above the adjacent conical surfaces a distance substantially greater than said clearance so that when said joint is assembled portions of said rubber rings are squeezed out between said surfaces into said clearance spaces.

926

wherein the midportions of the overlapping walls of the joined members are of substantially equal thickness, and held the selection of a suitable length and taper for the joint of Hinderliter No. 2,110,127 to be merely a matter of design. We find nothing unobvious in choosing the relative dimensions recited in claim 14 for the point members of the basic reference.

In connection with both applications, appellants urge that affidavits of record show that their sealed joints have filled a need in the industry and have met with commercial success. It is clearly established, however, that commercial success is not significant where, as we think is the case here, the subject matter of the claims sought is obvious in view of the teachings found in the prior art, In re Vincent Yettito, Jr., 274 F.2d 953, 47 CCPA 792.

The decisions of the board in both appeals are affirmed.

Affirmed.